UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ASHLEE BURKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-00736-JAR |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Ashlee Burke's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.

**I.   Background**

On July 31, 2019, Plaintiff protectively filed an application for SSI, alleging disability beginning January 18, 2008[1], due to bipolar disorder, depression, and anxiety disorder. After her application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on August 18, 2020, the ALJ issued a written decision on September 2, 2020 denying Plaintiff's application. Plaintiff's request for review by the Appeals Council was denied on April 23, 2021. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 560 U.S. 103, 107 (2000). Plaintiff filed this appeal on June 22, 2021. (Doc. No. 1). The Commissioner filed an Answer on August 26, 2021. (Doc. No. 11). Thereafter, Plaintiff filed a Brief in Support of the Complaint (Doc. No. 22) and the Commissioner filed a Brief in Support of the Answer (Doc. No. 27).

---

[1] Plaintiff has amended the alleged onset date to July 23, 2019.

1

II.   **Facts**

The Court adopts Plaintiff's Statement of Material Facts (Doc. No. 22-1) to the extent they are admitted by the Commissioner (Doc. No. 27-1). The Court further adopts the Commissioner's Statement of Additional Facts. (Doc. No. 27-1 at 3-4). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional facts will be discussed as necessary to address the parties' arguments.

III.   **Standards**

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018); see also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019) (citing Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id. The Court defers heavily to the findings and conclusions of the Social Security Administration.

Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010)).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); see also Stamper v. Colvin, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step

3

in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

4

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); Perks v. Astrue, 687 F.3d 1086, 1091-92 (8th Cir. 2012). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Harris v. Barnhart, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); see also Stamper, 174 F. Supp. 3d at 1063.

### IV.   Decision of the ALJ

After finding Plaintiff had not engaged in substantial gainful activity since the amended alleged date of disability onset, the ALJ determined that Plaintiff suffered from the following severe impairments: bipolar disorder, major depressive disorder, generalized anxiety disorder with panic, and obesity. (Tr. 17). The ALJ found that no impairment or combination of impairments met or medically equaled a Listing. (Tr. 17-18).

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform a range of light work as defined in 20 CFR §§ 416.967(b):

> She can lift/carry up to 20 pounds occasionally and 20 pounds frequently; stand/walk a total of six hours in eight, and sit a total of six hours in eight, except she cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps or

5

stairs, stoop, kneel, crouch, and crawl; can do simple, routine tasks where changes in duties are the same daily, tasks involve working with things rather than people, and tasks can be performing [sic] independently, and after any initial training period, social interaction is occasional at maximum, superficial in nature (meaning no mediation, arbitration, negotiation, or confrontation of or supervision of others), limited to co-workers and supervisors only, and there is no direct interaction with the public.

(Tr. 20).

Considering Plaintiff's age, education, work experience, and RFC, and the testimony of the vocational expert ("VE"), the ALJ concluded there are jobs existing in significant numbers in the national economy that Plaintiff can perform, such as a cleaner, hand packer, and production worker. (Tr. 23-24). Thus, the ALJ found Plaintiff was not disabled. (Tr. 24).

**V.     Discussion**

Plaintiff raises three issues on appeal. First, Plaintiff argues the mental RFC is not supported by substantial evidence because the ALJ improperly relied on the opinion of a non-examining, non-treating state agency psychological consultant. (Doc. No. 22 at 3-6). Second, Plaintiff argues the ALJ failed to properly evaluate the medical opinion evidence of Steven Kisker, M.D., Plaintiff's treating psychiatrist. (Id. at 6-9). Third, Plaintiff argues the ALJ failed to conduct a proper credibility evaluation. (Id. at 9-11). The Commissioner responds that the ALJ properly formulated Plaintiff's mental RFC (Doc. No. 27 at 2-4) and properly evaluated Plaintiff's symptoms and the medical opinion evidence (id. at 4-17).

"An ALJ determines a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations." Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017) (citation omitted). The Court will first address the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's subjective complaints was essential to the determination of other issues, including

6

Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010); Johnson v. Saul, No. 4:18-CV-725 PLC, 2020 WL 2800383, at *5 (E.D. Mo. May 29, 2020).

**Credibility**[2]

In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of symptoms; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010).

At the time of her hearing, Plaintiff was 27 years old and had not worked for a few years. (Tr. 33). Plaintiff states that her mental illness "limits [her]" in "getting along with others." (Tr. 149). It was her testimony that she was terminated from brief attempts at employment because of arguing or "getting into it" with coworkers and supervisors. (Tr. 34-36) ("I'm not a people person. If I feel like I'm being targeted, I have a hard time with, like, being under pressure without snapping, or expressing myself in a negative way."). Plaintiff also testified that she has difficulty

---

[2] Social Security Ruling 16-3p eliminates use of the term "credibility" and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole … [I]t largely changes terminology rather than the substantive analysis to be applied. Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020).

with concentration and focus and that her medication limits her ability to "perform daily tasks." (Tr. 38, 144).

Plaintiff argues the ALJ erred in discrediting her testimony without considering several of the factors listed in the Regulations and inaccurately considered other factors. While an ALJ is not required to explicitly discuss each Polaski factor, Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005), the ALJ is required to make an express credibility determination that explains the reasons for discrediting the claimant's complaints, and in doing so, acknowledge and consider the foregoing factors. Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012) (citing Partee v. Astrue, 638 F.3d 860, 865 (8th Cir. 2011) (internal citations omitted)). Here, the ALJ pointed to objective medical evidence, the conservative nature of Plaintiff's mental health treatment, the effectiveness of medication in managing her symptoms, and her activities of daily living, all of which supported the ALJ's determination regarding the severity of Plaintiff's symptoms.

The ALJ first considered the lack of objective medical findings to support Plaintiff's claims of mental disability during the relevant period. (Tr. 20-23). Plaintiff's treatment records with Dr. Kisker from February 2019 through May 2020 document that she was consistently alert, oriented, and cooperative, with no evidence of thought disorder, and  displayed average intelligence with good eye contact and intact cognition, memory, insight and judgment with no evidence of thought disorder. (Tr. 20-22, 234, 247, 253, 264, 267, 277, 290, 293, 301, 304, 332-33).

In August 2019, Plaintiff reported that since starting medication four weeks earlier, her anxiety had lessened, and she had no panic attacks. She also described her depression has "slightly improved." (Tr. 233-35, 239-40). In November 2019, Plaintiff reported that her panic/anxiety was well controlled with her current medication and that her depression was manageable. (Tr. 246) She declined any changes in her medication at that time. (Id.). During a telemedicine appointment in December 2019, Plaintiff reported that her anxiety level was "fairly manageable" with her

current medication regimen and that she was able "to stay effectively attentive and on-task for [the] most part." (Tr. 263). Her mental status examination showed she was oriented with no evidence of thought disorder and normal insight and judgment. (Id.).

During a follow up exam in February 2020, Plaintiff reported that her anxiety was adequately controlled with no panic and mild depression. (Tr. 271). She reported Lamictal was effective and noted less propensity to immediate irritable reactivity. Plaintiff stated she is consciously working to impede the jump to irritability and that overall, she was stable. (Id.). Plaintiff's mental status examination showed she was oriented with no evidence of thought disorder with normal insight and judgment. (Tr. 277). In April 2020, Plaintiff again reported doing well with medication ("meds are fine") with no more than intermittent anxiety and lability, no panic attacks, and nothing sustained or unmanageable. (Tr. 284). No significant changes were noted during her mental status exam. (Tr. 290). Plaintiff reported no acute changes at her May 2020 appointment and did not require a mental status exam. (Tr. 301). She was satisfied with her medication and stated, "I'm hangin' in there." (Id.). The ALJ properly considered Plaintiff's unremarkable or mild objective findings as one factor in assessing the credibility of her subjective complaints. See Goff, 421 F.3d at 792.

Next, the ALJ properly considered a psychological consultative evaluation of Plaintiff conducted by Andrew Menatti, Ph.D. on October 21, 2019. (Tr. 224-228). Dr. Menatti's mental status examination showed Plaintiff to be fully oriented and her thought processes were logical, linear, and goal directed. Plaintiff exhibited a neutral and mildly irritable mood and affect. Dr. Menatti diagnosed Plaintiff with generalized anxiety disorder, major depressive disorder, and borderline personality features. (Tr. 227). He opined that Plaintiff had moderate limitations in her ability to concentrate, persist, maintain pace, interact with others, and adapt, and mild limitation in her ability to understand, remember, or apply information. (Id.). See Mabry v. Colvin, 815 F.3d

9

386, 391 (8th Cir. 2016) (holding it was proper for the ALJ to rely on the opinion of the state agency consultant where it was consistent with other evidence).

The ALJ also properly considered Plaintiff's minimal and conservative course of treatment, consisting primarily of medication management without psychotherapy, with little change or adverse side effects. The ALJ noted that Plaintiff had resumed treatment after a period of no psychiatric treatment or medication for approximately five years. (Tr. 22). The ALJ further noted that Plaintiff has not sought any mental health counseling in conjunction with her psychiatric treatment appointments and her mental status has never declined to such an extent that emergency room or inpatient psychiatric treatment was needed. (Id.). See 20 C.F.R. § 404.1529(c)(3)(v) (explaining the agency considers the claimant's "treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms" when evaluating symptoms); Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (failing to seek treatment for a long time and conservative treatment weighs against credibility); Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failing to seek aggressive medical care is not suggestive of disabling pain).

Similarly, the ALJ properly noted the improvement of Plaintiff's symptoms with medication when analyzing her credibility. See 20 C.F.R. § 404.1529(c)(3)(iv) (explaining the agency considers the "effectiveness" of medication when evaluating symptoms); Mabry, 815 F.3d at 391-92 ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."); Wildman, 596 F.3d at 965 ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

Regarding Plaintiff's activities of daily living, the ALJ noted that Plaintiff described daily activities that were inconsistent with the severity of symptoms and degree of limitation alleged. While she is helped by her mother, Plaintiff can live and function independently and care for her

personal needs as well as those of her two minor children. She prepares meals, does light housework, handles money, shops, and drives. (Tr. 21, 149-159). Daily activities that are inconsistent with a claimant's subjective reports may support an adverse determination regarding the credibility of a claimant's allegations of disabling pain. See Vann v. Saul, No. 4:19-CV-01414-PLC, 2020 WL 6868669, at *12 (E.D. Mo. Nov. 23, 2020) (citing cases). For these reasons, the Court concludes the ALJ adequately applied the Polaski factors and properly discounted Plaintiff's subjective complaints.

**State agency psychological consultant**

Plaintiff takes issue with the ALJ's reliance on the opinions of State agency psychologist Charles Watson, Psy.D., in formulating the mental RFC. Dr. Watson examined Plaintiff's medical records and prepared an RFC assessment to the SSA on October 23, 2019. (Tr. 56-60).  Dr. Watson opined that Plaintiff is moderately limited in social interaction; detailed work; adaptation; and concentration, persistence, and pace; and able to meet the mental demands of simple work; interact with the general public and co-workers where contact is occasional, brief and incidental; and adapt to changes that are introduced gradually and slowly. (Tr. 60).

The ALJ found Dr. Watson's administrative medical findings persuasive and accepted his assessment as consistent with the objective medical evidence of record. (Tr. 22). The ALJ further found Dr. Watson's findings corroborated by the evaluation of the examining psychologist, Dr. Menatti, who opined no more than moderate mental limitations. (Tr. 22, 224-228). Plaintiff argues that Dr. Watson's opinion is not substantial evidence because he did not treat or examine her and did not have access to her ongoing treatment records with Dr. Kisker dated after his assessment.

Plaintiff correctly asserts that the opinions of non-examining or consultative sources do not, by themselves, constitute substantial evidence on the record as a whole. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010); Wildman, 596 F.3d at 967; Harvey v. Saul, No. 2:18-CV-00100-

11

NCC, 2020 WL 1139025, at *5 (E.D. Mo. Mar. 9, 2020). At the same time, however, the Social Security regulations explicitly provide that state agency consultants are "highly qualified ... experts in Social Security disability evaluations" and that ALJs "must consider" their findings as medical opinion evidence. 20 C.F.R. §§ 404.1513(c), 404.1527(e). See also Mabry, 815 F.3d at 391 (8th Cir. 2016) (holding that it was proper for the ALJ to rely on the opinion of the state agency consultant where it was consistent with other evidence).

Dr. Watson referenced Dr. Menatti's October 21, 2019 psychological consultative evaluation of Plaintiff and two of Dr. Kisker's treatment records from August 2019, and explained how those records supported Plaintiff's ability to perform light work with certain modifications. See Brandes v. Colvin, No. 4:15-CV-1737 NCC, 2017 WL 168457, at *8 (E.D. Mo. Jan. 17, 2017) (state agency consultant was not required to detail every report he relied on in completing his analysis). To the extent Plaintiff challenges Dr. Watson's opinion on the ground that it did not include later medical records, the Court's review of the record shows that Dr. Watson's opinion was consistent with the medical evidence as of his evaluation. See Casey v. Astrue, 503 F.3d 687, 694 (8th Cir. 2007). The Court notes that Plaintiff does not identify any subsequent medical records that might have changed Dr. Watson's assessment. Indeed, as discussed above, in the months following Dr. Watson's October 2019 review of Plaintiff's medical records, Plaintiff reported that her symptoms were well controlled with medication and that overall, she was stable. Accordingly, the timing of Dr. Watson's opinion did not render it deserving of less weight.

Moreover, the ALJ did not rely solely on Dr. Watson's determination and sufficiently considered Plaintiff's medical records in assessing her RFC. See Mabry, 815 F.3d at 390-91; Vann v. Saul, No. 4:19-CV-01414-PLC, 2020 WL 6868669, at *10-11 (E.D. Mo. Nov. 23, 2020). The ALJ did not err in assessing Dr. Watson's opinion, along with the evidence of record as a whole, and finding it persuasive.

**Medical opinion evidence**

Plaintiff argues the ALJ erred in failing to give proper weight to the opinion of her treating psychiatrist, Dr. Kisker. Dr. Kisker completed a mental medical source statement on July 28, 2020. (Tr. 340-342). The statement was submitted on a checklist-style form which allowed Dr. Kisker to opine on Plaintiff's level of impairment ("None," "Moderate," or "Marked") with respect to a number of different work-related tasks. Dr. Kisker opined that Plaintiff had marked interference in her ability to maintain the necessary concentration to persist at simple tasks; in her ability to initiate and complete tasks in a timely manner; in her ability to ignore or avoid distractions; sustain ordinary routine and regular attendance; work a full day without needing more than the allotted number or length of rest periods; regulate her emotions, control her behavior and maintain her wellbeing in a work setting; keep social interactions free of excessive irritability, argumentativeness, sensitivity or suspiciousness; and in her ability to respond appropriately to requests, criticisms, suggestions, corrections and/or challenges. (Tr. 339-340). Dr. Kisker further opined that Plaintiff had moderate limitations in her ability to follow one or two step oral instructions; use reason or judgment to make work related decisions; understand and learn terms, instructions, or procedures; function independently; distinguish between acceptable and unacceptable work performance, ask simple questions or request help; and maintain socially acceptable behavior. (<u>Id</u>.).

Dr. Kisker concluded that if required to perform simple tasks in a low-stress environment, for 8 hours a day, 5 days a week or an equivalent schedule, Plaintiff would be 31% or more below the overall pace of production required. (Tr. 339). If required to sustain performance 5 days a week, 8 hours per day with regular breaks (full-time), Plaintiff could not perform in proximity to coworkers without being distracted by them or without distracting them due to exhibition of abnormal behavior. (Tr. 340). She could not consistently perform for supervisors without

exhibiting insubordinate behavior in response to supervision or in a setting requiring contact with the general public. (Tr. 341).

Dr. Kisker also opined that due to Plaintiff's psychologically based symptoms, including severe distractibility, hyperactivity to minimal stimuli, and apprehensive fear, she would miss, be late, or need to leave work early at least 3 times per month. (Tr. 341-42). Dr. Kisker also listed Plaintiff's impairment of fundamental attention/concentration, social detachment with extreme avoidance, self-denigration, guilt and chronic hopelessness, as other reasons for her difficulty working at any job on a full-time sustained basis. (Tr. 342).

Under current regulations, a treating physician's opinion is entitled to no special deference. See 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."). Instead, the focus is on the persuasiveness of a medical opinion in terms of supportability and consistency, the two most important factors required by the new regulations. See 20 C.F.R. § 416.920c(a)-(c) (2017) (in evaluating persuasiveness, ALJ should consider supportability, consistency, relationship with the claimant – which includes length of the treatment relationship, frequency of examinations, examining relationship, purpose of the treatment relationship, and the extent of the treatment relationship, specialization, and other factors); 20 C.F.R. § 416.920c(b)(2) (2017) (the ALJ was required to explain how she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion).

Here, the ALJ determined that Dr. Kisker's opinion was not persuasive because it was not supported by his treatment records and many of his findings were inconsistent with the other medical evidence of record (Tr. 22-23), as discussed in detail above. See also Wildman, 596 F.3d

14

at 964 (finding the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration). Dotson v. Saul, No. 4:20 CV 310 RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021). Moreover, the ALJ incorporated into Plaintiff's RFC those limitations noted by Dr. Kisker which were consistent with the medical evidence as a whole. Dotson v. Saul, No. 4:20 CV 310 RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021).

### VI. Conclusion

For the foregoing reasons, the Court finds the ALJ's evaluation of Plaintiff's subjective complaints and the weight given to the opinions of Drs. Watson and Kisker is supported by substantial evidence on the record as a whole. The Court will, therefore, affirm the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's complaint is **DISMISSED with prejudice**. A separate Judgment will accompany this Memorandum and Order.

Dated this 12th day of September, 2022.

*/s/ John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**